D. Maimon Kirschenbaum
Denise Schulman
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

*Attorneys for Plaintiff, putative FLSA Collective*
*Plaintiffs, and putative Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**KRISTIN AVERY, on behalf of herself and**
**all others similarly situated,**

<div style="margin-left:2em">

**Plaintiff,**

v.

**LE BERNARDIN, INC., MAGUY LE COZE**
**and ERIC RIPERT,**

<div style="margin-left:4em">**Defendants.**</div>

</div>

-----------------------------------------------------------x

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Kristin Avery alleges as follows:

## INTRODUCTION

1.      Le Bernardin is one of the finest restaurants in the United States, and Le

Bernardin owner Defendant Eric Ripert is one of the world's most celebrated chefs.

2.      On December 11, 2017, in the wake of news articles regarding severe sexual

harassment allegations against celebrity chef Mario Batali, Defendant Ripert tweeted: "Treating

anyone with less than the upmost respect is completely unacceptable.  Any behavior that's

abusive or hurtful in any way has never been tolerated in our restaurant.  All of our safety,

wellbeing and success in the workplace and society depends on compassion and accountability.

Higher moral standard should be the rule and not the exception."

3.      Unfortunately, the workplace realities at Le Bernardin do not match the sentiment

in Defendant Ripert's tweet.

4.      Women at Le Bernardin are sexually harassed, and complaints about harassment are either ignored or result in the complainer being shamed by the restaurant's management.

5.      This awful behavior goes all the way to the top, as illustrated by, for example, Defendant Maguy Le Coze's body shaming of Plaintiff shortly after giving birth for her weight gain.

6.      Ultimately this discriminatory behavior resulted in Plaintiff's constructive discharge.

7.      Specifically, Plaintiff asked to work lunch shifts so that she could spend evenings with her newborn child.  This was plainly a reasonable accommodation, as lunch shifts are generally less desirable shifts among the waitstaff because they earn less in tips than they do during dinner shifts.  Nevertheless, Defendants refused to accommodate Plaintiff's request, effectively pushing her out of her job.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA. This Court has supplemental jurisdiction over New York state law claims brought under the NYCHRL, and NYLL as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court also has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as Plaintiff is a resident of Virginia and all Defendants are residents of New York, and the value of Plaintiff's claims exceeds $75,000.

10.     Venue is proper in this District because Defendants conduct business in this

District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

11.     Defendant Le Bernardin, Inc. is a New York Corporation that operates Le Bernardin restaurant in Manhattan.

12.     Upon information and belief, Defendant Le Bernardin, Inc. has annual gross sales in excess of $500,000.

13.     Defendant Eric Ripert is a chef/owner and operator of Le Bernardin.

14.     Upon information and belief, Defendant Ripert exercises sufficient control of the restaurant's day to day operations to be considered Plaintiff's employer.

15.     Defendant Ripert is active in the restaurant and is frequently there to manage its day-to-day affairs.

16.     Defendant Ripert has and at times exercises authority to make important personnel decisions such as hiring and firing and/or disciplining employees.

17.     Defendant Maguy Le Coze s an owner of Le Bernardin.

18.     Defendant Le Coze exercises sufficient control of the restaurant's day to day operations to be considered Plaintiff's employer.

19.     In an interview with Bloomberg.com, Defendant Ripert said that he comes to the restaurant every morning to catch up on the restaurant's operations with the restaurant's general manager and his partner Defendant Le Coze.

20.     In that same interview, Defendant Ripert stated ""There's an intensity when I'm around [at the restaurant], when you see the boss, you see the boss."

21.     Defendant Le Coze has stated in public many times, including in interviews, that she is in charge of the front of the house (the service team) at Le Bernardin,

22.     Defendant La Coze stated in the book about Le Bernardin, On the Line, "No matter where I am in the world, I'm closely involved with everything that happens in the restaurant.  If there's a blocked drain in the kitchen, I know about it…So many restaurateurs who have expanded no longer have a presence in their restaurant.  Eric [Ripert] and I make sure that one of us is always there.

23.     All Defendants are hereinafter collectively referred to as "Defendants."

24.     Plaintiff Kristin Avery worked for Defendants as a server from September 2012 until July 2015.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiff brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all service employees, other than service managers, employed by Defendants at Le Bernardin on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective").

26.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage for all hours worked and allowing non-tipped employees to share in their tips.  The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

27.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Le Bernardin. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Le Bernardin.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

28.     Plaintiffs bring the Third, Fourth, Fifth, and Sixth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all service employees, other than service managers, employed by Le Bernardin on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

29.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable.  The number and identity of the Class members are determinable from Le Bernardin's records.  The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Le Bernardin's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Le Bernardin.  Notice can be provided by means permissible under said F.R.C.P. 23.

30.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Le Bernardin, upon information and belief, there at least forty (40) members of the Class.

31.      Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.   All the Class members were subject to the same corporate practices of Le Bernardin, as alleged herein, of failing to pay all minimum wage and overtime pay due, misappropriating Class members' tips, and failing to provide Class members with required wage notices.   Le Bernardin's corporate-wide policies and practices affected all Class members similarly, and Le Bernardin benefited from the same type of unfair and/or wrongful acts as to each Class member.   Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.      Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.   Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Le Bernardin.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.   On the other hand, important public interests will be served by

addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Le Bernardin and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.      Upon information and belief, Le Bernardin and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

35.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

   b) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c) Whether Defendants paid Plaintiff and the Class members the appropriate minimum wage for all hours worked.

d) Whether Defendants gave Plaintiff and the Class members the wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order.

e) Whether Defendants required Plaintiff and the Class members to share gratuities with tip-ineligible employees.

## FACTS

### Wage and Hour Facts

36.    Plaintiff's consent to sue form is attached hereto as Exhibit A.

37.    Defendants paid Plaintiff pursuant to a tip credit, which in 2015 was less than the federal minimum wage, and for all years covered by this lawsuit, was less than the New York minimum wage.

38.    Defendants were not entitled to use the tip credits set forth under the FLSA and New York law, because they (a) required Plaintiff to share tips with tip-ineligible employees, and (b) they did not give Plaintiff proper notice of minimum wage and tip credit each time the minimum wage changed, as required by NYLL § 195.

39.    Plaintiff occasionally worked more than 40 hours per week, as is reflected on her paystubs for the period covered by this lawsuit.  Because Defendants incorrectly used the tip credit to determine Plaintiff's wage, Plaintiff's overtime rate was also incorrect.

40.    Plaintiff and all service employees were required to share tips with Tomislaw Dzelalija, an individual with significant managerial authority.

41.    Mr. Dzelali had significant authority with respect to hiring.  For example, Mr.

Dzelalija interviewed Plaintiff for employment.  Mr. Dzelalija also had significant authority over scheduling matters at the restaurant.

42.     Until about 2015, Plaintiff's wage statements did not make any mention of the tip credit, as required by NYLL § 195.

43.     Plaintiff committed the foregoing acts against Plaintiff and the Class Members.

### Discrimination/Retaliation Facts

44.     During her employment, Plaintiff complained several times to David Mancini, a General Manager of Le Bernardin, about sexual harassment by male employees at Le Bernardin. For example, on two occasions captains at the restaurant touched Plaintiff on her butt inappropriately.  Plaintiff also told Mr. Mancini that male captains at the restaurant frequently sexually harassed the hostesses at the restaurant.

45.     On another occasion, Plaintiff complained to Mr. Mancini that kitchen employees taunted her about a sexual assault that she endured, claiming that she had fabricated the incident and calling her a "whore."

46.     Mr. Mancini ignored Plaintiff's complaints and did nothing to correct the situation.

47.     To make things worse, Mr. Mancini conducted a meeting with several Le Bernardin employees.  At the meeting Mr. Mancini told kitchen employees not to speak to Plaintiff at all "because she is a dangerous person and a lawsuit waiting to happen."

48.     As a result of that meeting, Plaintiff became a pariah at the restaurant and many employees completely ignored her.

49.     Plaintiff was humiliated and distraught by this awful predicament.

50.     In or about the spring of 2014, Plaintiff became pregnant.

51.     During her pregnancy, Defendants did nothing to accommodate Plaintiff's reasonable requests.   After Plaintiff took one lunch shift due to morning sickness, she was encouraged by the restaurant to take an extended leave.   Plaintiff needed the income from her job, and told management that she did not need, nor did she want to take an extended leave.

52.     Defendants did not allow Plaintiff to take a break for a few minutes to sit down and eat a small snack in a secluded area during her pregnancy.

53.     Defendants refused to provide Plaintiff with a maternity sized uniform jacket, and they in fact required Plaintiff to buy her own with no reimbursement.

54.     Plaintiff was scheduled to return to work after her childbirth in March 2015.

55.     Shortly before her return, Plaintiff met with Katie Broad, director of operations, and Ben Chekroun, manager, to discuss Plaintiff's desire to be scheduled for lunch shifts only for a few months, so that Plaintiff could spend time with her newborn baby.

56.     Plaintiff's request for this accommodation was reasonable, as lunch shifts were not particularly desirable shifts for waiters, and it could easily have been arranged for Plaintiff to have a lunch-only schedule for a few months.   Nevertheless, Defendants rejected Plaintiff's request, and scheduled her for lunch and dinner shifts on her return.

57.     During the first week of Plaintiff's return to work, Defendant Le Coze noticed Plaintiff was back, and with visible shock and disgust said, "Oh, you are back."

58.     About a week later, Defendant Le Coze approached Plaintiff, placed her hand Plaintiff's stomach, and said, "Are you planning on losing on weight?"

59.     Plaintiff attempted to deflect the awful comment and responded, "I am trying to avoid dessert."  Defendant Le Coze responded seriously, "It is very important."

60.     Plaintiff was completely humiliated by the incident, and in fact broke down

crying when she left the restaurant.

61.     Realizing that Le Bernardin would not accommodate her reasonable requests, and that she was generally a persona non-grata at the restaurant, Plaintiff had no choice but to leave her employment in July of 2015.

## FIRST CLAIM FOR RELIEF
### FLSA Minimum Wage Claims, 29 U.S.C. § 201, *et seq.*,
### Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs

62.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

63.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

64.     Defendants knowingly failed to pay Plaintiff and the FLSA Collective Plaintiff the federal minimum wage for each hour worked.

65.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### FLSA Overtime Violations, 29 U.S.C. § 207
### Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs

66.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

67.     At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for

"commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

68.     Throughout the statute of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek and continue to do so.

69.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the FLSA Collective Plaintiffs members one-and-one-half times the greater of their regular rate or the minimum wage for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

70.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**New York State Minimum Wage Act, New York Labor Law § 650 *et seq.***
**Brought by Plaintiff on Behalf of Herself, the Opt-In Plaintiffs, and the Class**

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72.     Defendants knowingly paid the Plaintiff and members of the Class less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

73.     Defendants did not pay Plaintiff and members of the Class minimum wage for all hours worked.

74.        Defendants' failure to pay Plaintiff and members of the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

75.        As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
**New York Overtime Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.4**
**Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs**

76.        Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77.        It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

78.        Throughout the Class period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate of one-and-one-half times the minimum wage for hours worked in excess of forty (40) hours per workweek.

79.        As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs**

80.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

81.     Defendants did not provide Plaintiff and the members of the Class with the notices/wage statements required by N.Y. Lab. Law § 195.

82.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 198.

### SIXTH CLAIM FOR RELIEF
**Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d**
**Brought by Plaintiff on Behalf öf Herself, the Class, and the Opt-In Plaintiffs**

83.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

84.      Defendants illegally required Class Members to share gratuities with managerial employees.

85.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
**(New York City Human Rights Law ("NYCHRL")**
**N.Y. Admin. Code §§ 8-101 *et seq.* – Gender/Caregiver Discrimination)**

86.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

87.     A copy of this Complaint will be delivered to the New York City Corporation Counsel.

88.     In violation of the NYCHRL, Defendants discriminated against and/or aided and

14

abetted discrimination against Plaintiff on the basis of her gender and caregiver status and constructively discharged her.

89.     As a direct and proximate result of Defendants' discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

90.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

91.     Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

92.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

93.     An award of damages, according to proof, including back pay and liquidated damages, to be paid by Defendants;

94.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiff and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting

them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

95.     Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

96.     Designation of this action as a class action pursuant to F.R.C.P. 23.

97.     Designation of Plaintiff as Representative of the Class.

98.     An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

99.     An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, and punitive damages, to be paid by Defendants;

100.     Penalties available under applicable laws;

101.     Costs of action incurred herein, including expert fees;

102.     Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

103.     Pre-judgment and post-judgment interest, as provided by law; and

104.     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York
        January 24, 2018

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: _____
    D. Maimon Kirschenbaum
    Denise Schulman
    32 Broadway, Suite 601
    New York, NY 10004
    Tel: (212) 688-5640

*Attorneys for Plaintiff, putative FLSA Collective
Plaintiffs, and putative Class Members*

``

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands jury trial on all causes of action and claims with respect to which she has a right to jury trial.

``